UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| ROBERT HENDERSON, § § § **Plaintiff,** § § VS. § § **84 LUMBER CO., ACE HARDWARE CORP., AIR & LIQUID SYSTEMS CORPORATION, A/K/A Buffalo Pumps, Inc., AURORA PUMP COMPANY, BIRD, INC., CBS CORPORATION, f/k/a Viacom, Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corp., CERTAINTEED CORPORATION, CLEAVER-BROOKS, INC. F/K/A CLEAVER BROOKS, A DIVISION OF AQUA-CHEM, INC., CRANE CO., GENERAL ELECTRIC COMPANY, INGERSOLL-RAND COMPANY, UNION CARBIDE CORPORATION, WARREN PUMPS, LLC, WEIR VALVES & CONTROLS USA INC., F/K/A ATWOOD & MORRILL,** § § § § § § § § § § § § § § § § § § § § **Defendants.** § § | CIVIL ACTION NO. _____ |
|---|---|

## CBS CORPORATION AND GENERAL ELECTRIC COMPANY'S NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF UNITED STATES DISTRICT COURT:

Pursuant to Title 28 U.S.C. § 1442(a)(1) and 1446, Defendants CBS Corporation ("Westinghouse")[1] and General Electric Company ("GE") (collectively, "Defendants") give notice of removal of an action filed against them in the Supreme Court of New York, New York County, to the

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

United States District Court for the Southern District of New York. In support, Defendants respectfully offer the following:

### Preliminary Matters

1. On or about February 6, 2018, plaintiff filed this lawsuit, entitled Robert Henderson, Index No. 190027/2018, against GE, Westinghouse and other defendants in the Supreme Court of New York, New York County. *See* Summons and Complaint attached hereto as Exhibit A. GE and Westinghouse were served on February 13 and February 12, 2018. The Complaint alleges that plaintiff Robert Henderson was exposed to asbestos while serving as a machinist mate in the United States Navy, specifically aboard the USS Barney (DDG-6), between 1973 and 1975. *Id.*

2. Thus, this Notice of Removal is timely filed in that it is filed within thirty (30) days after service of the Summons and Complaint on Defendants from which they ascertained that this case is removable. 28 U.S.C. § 1446(b).

### Nature Of The Case

3. The case is based on plaintiffs' allegations that Mr. Henderson's asbestos-related disease, specifically lung cancer, was caused by his exposure to asbestos dust and/or fibers.

4. Plaintiffs assert failure to warn and negligence claims against GE and Westinghouse.

### Grounds For Removal

5. This Notice of Removal is filed within thirty (30) days of Defendants' receipt of the Summons and Complaint from which they could ascertain that the case was removable. 28 U.S.C. § 1446(b). GE and Westinghouse manufactured marine steam turbines and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed by the Navy. Defendants have confirmed that they manufactured turbines aboard the USS Barney (DDG-6). The basis for removal is that they acted under the authority, direction and control of an officer or agency of the United States for

purposes of 28 U.S.C. § 1442(a)(1), and can state a colorable federal law-based "government contractor" defense to those claims.

6. Should plaintiff file a motion to remand this case, Defendants respectfully request an opportunity to respond more fully in writing, but offer the following authorities at this time:

7. As recognized in a landmark decision by the United States District Court for the Eastern District of Pennsylvania (MDL-875) in *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770 (E.D. Pa. 2010), Westinghouse has a federal defense to this action. *See Hagen*. In examining virtually identical evidence submitted in the case at bar, Judge Eduardo C. Robreno found that the defendant, Foster Wheeler, raised a colorable defense to plaintiff's failure to warn claims, *i.e.,* government contractor immunity from liability for injuries arising from any exposure to asbestos related to boilers and auxiliary equipment aboard Navy vessels, insofar as they were designed and manufactured by Foster Wheeler according to strict Navy specifications. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

8. In reaching his conclusion, Judge Robreno discussed in detail the three elements necessary for removal under this statute. First, a defendant must demonstrate that it is a "person" within the meaning of the statute. *Hagen,* at 776. The definition of a "person" includes a corporation. *Id.* Second, defendants must raise a colorable claim to a federal law defense. *Id.* As previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense. *Id.* Third, the defendant must establish that the suit is for any act under color of federal office, i.e., there is a causal connection between the charged conduct and asserted official authority. *Id.* Causation exists

if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Id.*

9. The second and third elements require a substantial degree of direct and detailed federal control over defendant's work and a causal nexus between the defendant's actions under the federal officer and plaintiff's state court claims. *Hagen*, at 776. Although set forth in the statute as two separate requirements, Judge Robreno recognized that the evidentiary similarities between the "acting under" and "causal nexus" prongs have often prompted courts to collapse them into one single requirement. *Id.* at 784 [*citing Good v. Armstrong World Indus., Inc.* 914 F.Supp. 1125, 1128 (E.D. Pa 1996) ("The 'acting under' language in the statute forces [the defendant] to show a causal nexus between the plaintiff's claims and the conduct taken pursuant to direction from a federal officer.")].

10. What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case. Like the *Hagen* court, federal courts across the country, including the Second Circuit, have upheld removal because defendants were sued as a result of designing and manufacturing products pursuant to detailed and strict military specifications. *See Donohue v. CBS Corp.*, 2017 WL 5713222 (S.D.N.Y. Nov. 27, 2017) (removing defendant entitled to remove based on affidavits indicating Navy control, supervision and direction over what was labeled on equipment); *Cuomo v. Crane Co.,* 771 F.3d 113 (2d Cir. 2014) (Crane Co. provided sufficient evidence that easily cleared the low threshold for asserting a federal contractor defense); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) (reversing lower court's grant of remand and finding Foster Wheeler satisfied federal officer removal statutory requirements); *Zeringue v. Crane Co.,* 846 F.3d 785, 789-90 (5th Cir. 2017) (section §1442(a)(1) is a "pure jurisdictional statute" that permits a federal defense "to serve as the federal question that endues the court with jurisdiction"); *Leite v. Crane Co.,* 749 F.3d 1117 (9th Cir. 2014) (plaintiff's failure to warn claims and defendant's government contractor defense is one for the

federal and not state court to decide); *Ruppel v. CBS Corporation,* 701 F.3d 1176 (7th Cir. 2012) (reversing lower court decision to remand and finding removal proper where Westinghouse established through affidavits that it had a colorable government contractor defense to plaintiff's claims).

11. As detailed in *Hagen*, critical to the defendant's evidence is whether defendant has demonstrated sufficient facts establishing that its government contractor defense is "colorable"[2] or "plausible". *See Hagen*. In the context of a "failure to warn" case, **the defendant need not show that the Navy expressly barred or broadly preempted the inclusion of asbestos warnings on its products**. *Id.* at p.19. *See also Kerstetter v. Pacific Scientific Co.,* 210 F.3d 431, 438 (5th Cir.) *cert. denied* 531 U.S. 919 (2000)(government contractor defense is available in "failure to warn" claims where the evidence shows that the lack of a warning reflects governmental direction or control rather than the unfettered discretion of the product's manufacturer, and applies wherever: 1) the government approved or authorized the warnings which the plaintiff contends were inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and 3) the manufacturer warned the government as to any product hazards known by the manufacturer but unknown by the government. *Kerstetter,* 210 F.3d at 438).

12. As stressed in *Kerstetter*, "[t]he government need not prepare the specifications to be considered to have approved them." *Id.* at 435. The only material issue is whether the manufacturer's designs and specifications were subjected to "substantial review" rather than a mere "rubber stamp" approval. *Id.* While this determination is necessarily fact specific, "substantial review" has plainly been shown upon evidence of a "`continuous back and forth' between the contractor and the government." *Id.*

---

[2] The *Hagen* court distinguished the showing of a "colorable" defense required for removal from the ultimate evidentiary showing at trial, and ruled that the colorable defense standard for purposes of removal "is not an onerous one to satisfy." *Hagen*, at 780. Thus, "a defense is colorable for purposes of determining jurisdiction under Section 1442 (a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Id.* at 783.

In this regard, "[t]he specifications need not address the specific defect alleged; the government need only evaluate the design feature in question." *Id.* Once again, applying these general principles to "failure to warn" claims, the fact that governmental specifications or regulations did not specifically preclude the exact warning desired by the plaintiff does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warnings provided by the contractor) and was generally aware of the hazard in question. *Id.* at 438. Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." *Id.* at 438.

13. As explained by Hobson:

> [T]he Navy exercised extensive control over communications between GE and Navy personnel.
>
> The U.S. Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by GE to the Navy. GE was not permitted, under the specifications, associated regulations and procedures, and the actual practice as it existed in the field, to affix any type of warning that addressed alleged hazards of products not supplied by GE, such as thermal insulation materials that were procured by the Navy's shipbuilder from an insulation vendor pursuant to Navy specifications.
>
> The Navy required that each Navy turbine be accompanied by a defined number of copies of technical manuals related to that specific turbine. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval turbines only to the extent directed by the Navy.
>
> [T]he Navy, not GE, determined the nature of warnings communicated to naval personnel in relation to shipboard equipment and materials.

*See* Declaration of David Hobson, attached hereto as Exhibit B, at ¶¶ 20-22. Thus, the presence or absence of warnings regarding GE equipment was strictly controlled by the Navy - and a clear basis for removal exists under § 1442(a)(1).

14. The Navy exercised rigid control over the design, manufacture and installation of essential equipment and materials, including written communication, and imposed requirements for

6

warnings and documentation necessary for the maintenance of this equipment to ensure that personnel received only one clear set of instructions approved by the chain of command. The Navy did not permit any equipment manufacturer to interfere with the mission success by supplying turbines that did not expressly comply with Navy specifications or by placing warnings on equipment or in instruction manuals without Navy approval. *See* Affidavit of Roger B. Horne, attached hereto as Exhibit C, at ¶¶33, 37.

15. In designing, manufacturing and supplying the turbines at issue in this case to the United States Navy, Westinghouse acted under the detailed and ongoing direction and control of one or more federal officers. More specifically, Westinghouse manufactured and designed such equipment in accordance with precise, detailed, specifications promulgated by Navy Sea Systems Command. Moreover, an Inspector of Naval Machinery ("INM"), who was resident at Westinghouse's manufacturing facility, personally oversaw the manufacturing process and enforced compliance with the Navy's design specifications. Further, the Westinghouse Navy equipment in question was subject to various tests and trials supervised by the United States Navy before it was approved for use on military vessels. In sum, all relevant aspects of the design and manufacture of the turbines and/or related equipment were subject to close, detailed and ongoing supervision and control by the United States Navy and its officers.

16. There was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any machinery on a Navy ship known by Defendants that was not known to the United States and the Navy. *See* Affidavit of Lawrence Stilwell Betts, MD, PhD, CIH, FACOEM, dated February 9, 2005, attached hereto as Exhibit D at ¶ 31. ("Betts Affidavit") and Affidavit of Samuel A. Forman, M.D., attached hereto as Exhibit E.

17. Nowhere is it required that Defendants produce physical contracts to prove the Navy's extensive direction and control over product specifications to satisfy the requirements of § 1442(a)(1).

18. A properly removed case cannot be remanded for discretionary or policy reasons such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405 (1960).

19. Defendants are not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiff's action as a whole under § 1442(a)(1). *See Torres v. CBS News*, 854 F.Supp. 245 (S.D.N.Y. 1994)

20. As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon defendant are being filed with this Notice of Removal.

## Conclusion

21. Removal of this action is proper under 28 U.S.C. § 1442, because it is a civil action brought in a state court, and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442(a)(1) because Defendants were acting under an officer or agency of the United States.

WHEREFORE, CBS Corporation and General Electric Company, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, remove this action for trial from the Supreme Court of New York, New York County, on this 13th day of March, 2018.

    Respectfully submitted,

    **TANENBAUM KEALE LLP**

    /S/ Dennis E. Vega
    Dennis E. Vega

                                            Afigo I. Okpewho-Fadahunsi
                                            One Newark Center
                                            1085 Raymond Boulevard, 16th Floor
                                            Newark, New Jersey 07102-5225
                                            (973) 242-0002 (Tel)
                                            (973) 242-8099 (Fax)
                                            dvega@tktrial.com
                                            *Attorneys for Defendants CBS Corporation and General Electric Company*


**cc: Federal Express**
NAPOLI SHKOLNIK, PLLC
360 Lexington Avenue
New York, NY 10017
*Attorneys for Plaintiff(s)*

All Known Defense Counsel (via Email and/or Regular mail w/out encls.)